UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
 Jamal Shand,

                         Plaintiff,                   Complaint

    -against-                               CIVIL ACTION

Police Officer Maria Mendez, Shield No. 10546, Police Officer
Ryan Marrero, Shield No. 13890, Police Officer Michael
Carolan, Shield No. 13989, Police Officer Mingwei Gao, Shield
30889, Police Officers John Doe, 1-10, Sgt. John Doe 11,
Captain John Doe 12, City of New York,
                          Defendants.
_____X

       **NOW COME** the Plaintiff, **Jamal Shand,** by and through his attorney, **D. Andrew Marshall, Esq.** for his Complaint against the Defendants, respectfully shows to this Court and allege:

<u>PRELIMINARY STATEMENT</u>

1. This is a civil rights action in which the Plaintiff seeks relief for the Defendants' violations of his rights secured by Title 42 of the United States Code §1983, by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States, and the Constitution of the State of New York, 42 U.S.C. § 1437, *et seq.*

2. Plaintiff brings this action seeking compensatory damages, punitive damages and attorney's fees for violations and deprivations of their civil and constitutional rights by the defendants, their agents, servants and/or employees, while acting under color of law.

3. The Defendants City of New York, hereinafter, "**Defendant NYC,**" operating through and in conjunction with the New York City Police Department

1

("NYPD"), have implemented and continue to conduct, enforce and sanction an arrest policy which has resulted in a pattern and practice of disparate illegal stops, seizures, questioning, searches, use of force, false arrests and malicious prosecution of African Americans.

4. Under the arrest practices, NYPD officers conduct aggressive roving pedestrian stop, searches and seizures in predominately African American communities designated "high-crime areas," wherein they indiscriminately stop and question every person they observe, without objective individualized suspicion of a crime, and unlawfully arrest individuals without probable cause.

5. The patrol policy and arrest practices involve systematic stopping, searching, questioning, and seizing individuals with unreasonable force absent individualized suspicion that implicate the Fourth Amendment to the United States Constitution.

6. Defendant NYC and the NYPD implement and apply these policies, practices, and customs in an unconstitutional manner by focusing the patrols and arrest practices entirely on communities of color designated "high-crime areas," ensuring that African Americans and Latinos will bear the brunt of Defendants' unlawful actions.

7. Defendant NYC and NYPD also discriminatorily acquiesce in, ratify, and fail to monitor or rectify NYPD officers' widespread unlawful practices.

8. As a result, individuals like Plaintiff J. Shand are being unconstitutionally detained and/or arrested without reasonable suspicion or probable cause.

9. The rate of stops, arrests, and enforcement in predominantly minority communities belies the alleged rates of crime reported in the said precincts.

10. The patrol policy and arrest practices not only affect the falsely accused like Plaintiff J. Shand, it also affects their family members who are often within the zone of danger when the police take action, resulting in secondary trauma to that family member.

11. The decision to enforce patrol policy and arrest practices in this disproportionate way is not explained or justified by underlying crime levels.

12. The mandate of the NYPD is to safeguard community members from crime by providing security and otherwise delivering police services.

13. Plaintiff J. Shand is not provided protection on the same terms as other community members, rather he and those similarly situated are subject to, without limitation, unfounded stops, seizures, questioning, searches, and arrests when they are merely trying to enter, leave or enjoy the comforts of their homes and fellowship with their family and friends without unjustified government interference police intrusions, including.

14. The individual Defendant Police Officers were acting under color of state law in the course and scope of their employment, agency and service vis-à-vis Defendant NYC or the NYPD, a department of the Defendant NYC.

15. Alternatively, if, the individual Defendant Police Officers were not acting under color of state law in the course and scope of their employment, agency and service, they were negligently acting beyond the scope of their duty as police officers.

3

16. As a result of the defendants' aforementioned acts and omission, Plaintiff J. Shand suffered damages, including without limitation, deprivation of his rights, rights, privileges and immunities, as well as physical, emotional, mental and psychological injuries and damages.

17. The Defendants herein are collectively and individually responsible for the deprivation of rights, privileges and immunities and other damages visited upon Plaintiff J. Shand.

## JURISDICTION

18. That jurisdiction is founded upon the existence of a Federal Question.

19. That jurisdiction is founded upon U.S.C. §1331 and §1343(3) and (4), which confers jurisdiction in actions authorized by 42 U.S.C. § 1983 against defendants acting under color of state law, statute, ordinance, regulation, custom or usage.

20. The amount in controversy exceeds, exclusive of interest and costs, the sum or value of seventy-five thousand dollars ($75,000.00).

## VENUE

21. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c) because the claim arose in this district.

## JURY DEMAND

22. Plaintiff demands a trial by jury in this action.

PARTIES:

23. Plaintiff Jamal Shand, hereinafter "**Plaintiff J. Shand**," is a citizen of the State of New York within the jurisdiction of this court.

24. On June 8, 2015 at all times relevant and material to this case **Defendant NYC** was and still is a body corporate and politic, constituting a municipal corporation duly organized and existing under and by virtue of the laws of the City and State of New York.

25. **Defendant NYC** is authorized under the laws of the State of New York to maintain, operate, and govern a police department, the NYPD, including the precincts of the NYPD and the personnel assigned or stationed there, all of whom act as Defendant NYC's agent in the area of law enforcement and for which Defendant NYC is ultimately responsible.

26. On June 8, 2015 at all times relevant and material to this case the Defendant NYC, its departments, agents, servants, and/or employees were charged with, including without limitation, hiring, training, retraining, directing, supervising, investigating, disciplining, overseeing, appointing, and promoting it officers, supervisors, and staff in their employ, including but not limited to individual Defendant Police Officers herein.

27. On June 8, 2015 at all times relevant and material to this case Defendant Police Officer Maria Mendez, hereinafter "**Defendant Mendez**," was employed by Defendant NYC and NYPD at the 32nd Precinct as a police officer. She is sued in her individual and official capacities.

5

28. On June 8, 2015 at all times relevant and material to this case Defendant Police Officer Ryan Marrero, Shield No. 13890, hereinafter "**Defendant Marrero**," was employed by Defendant NYC and NYPD at 32nd Precinct, as a police officer. He is sued in his individual and official capacities.

29. On June 8, 2015 at all times relevant and material to this case Defendant Police Officer Michael Carolan, Shield No. 13989, hereinafter "**Defendant Carolan**," was employed by Defendant NYC and NYPD at 32nd Precinct, as a police officer. He is sued in his individual and official capacities.

30. On June 8, 2015 at all times relevant and material to this case Defendant Police Officer Mingwei Gao, Shield 30889, hereinafter "**Defendant Gao**," was employed by Defendant NYC and NYPD at 32nd Precinct, as a police officer. He is sued in his individual and official capacities.

31. On June 8, 2015 at all times relevant and material to this case Defendant Police Officers John Doe 1-10, hereinafter "**Defendants Doe 1-10**," were employed by Defendant NYC and NYPD at 32nd Precinct as police officers. They are sued in their individual and official capacities.

32. On June 8, 2015 at all times relevant and material to this case Defendant Sgt. John Doe11, hereinafter "**Defendant Sgt. Doe 11**," was employed by Defendant NYC and NYPD at 32nd Precinct as a Police Officer with the rank of sergeant and first line supervisory responsibilities duties. He is sued in his individual and official capacities.

33. On June 8, 2015 at all times relevant and material to this case, Defendant Captain John Doe 12, hereinafter "**Defendant Captain Doe 12**," was

employed by Defendant NYC and NYPD at the 32nd Precinct, as a police officer with the rank of Captain and first line supervisory responsibilities duties. He is sued in his individual and official capacities.

34. Upon information and belief, Defendant NYC and NYPD remain the public employer of the named defendant police officers.

35. As used herein, the term "police officer" is intended to refer to NYPD officers in the general and not to any specific rank, title, or position.

36. Defendants Doe 1-10, Sgt. Doe 11, and Captain Doe 12 were employed by Defendant NYC, as police officers or supervisors, whose true names and shield numbers are presently unknown to Plaintiff.

37. Defendants herein were those police officers who: used excessive force against Plaintiff J. Shand in the immediate presence of his wife D. Shand: caused Plaintiff J. Shand to sustain serious and permanent physical injuries; caused Plaintiff J. Shand to sustain serious and permanent psychological damage; ignored, refused, denied and/or delayed Plaintiff J. Shand's request for medical attention for the injuries caused and created by the defendant police officers; falsely detained, arrested and imprisoned Plaintiff J. Shand in the immediate presence of his wife D. Shand; conspired  to and actually deprived Plaintiff J. Shand of his rights, privileges and immunities in the immediate presence of his wife D. Shand; knowingly drafted and/or filed false incident reports, summons(es), appearance tickets, NYPD complaint and arrest reports against Plaintiff Shand; gave knowingly false statements or testimony in or for a criminal proceeding regarding Plaintiff J. Shand; maliciously prosecuted

7

Plaintiff J. Shand; acted in an manner designed to cover up evidence of their unlawful an unconstitutional activities alleged herein, and; otherwise acted unlawfully.

38. The individual Defendant Police Officers' acts and omissions herein complained of were carried out in gross disregard of Plaintiff J. Shand's rights, privileges and immunities.

39. At all relevant times, the individual Defendant Police Officers were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

<u>STATEMENT OF FACTS:</u>

40. This action arose out of incidents that began on June 8, 2015 at approximately 10:00 p.m. in the vicinity of 203 West 140th Street, City, County and State of New York, hereinafter, "the subject premises."

41. At all times material and relevant to this claim, the subject premises are a privately owned multi-unit dwelling.

42. At all times material and relevant to this claim, Plaintiff J. Shand lawfully resides in the subject premises with his family.

43. On the date and time in question Plaintiff J. Shand and his wife D. Shand, with no criminality afoot, were standing together on the outside steps of the subject premises steps near the front entrance to the subject premises.

44. On the date and time in question Plaintiff J. Shand and D. Shand were observing a police investigation of a possible shooting in the vicinity of the subject premises.

45. On the date and time in question multiple civilians were aligning the observing a police investigation of a possible shooting in the vicinity of the subject premises.

46. On the date and time in question the said possible shooting was unrelated to Plaintiff J. Shand and D. Shand.

47. On the date and time in question, Defendant Mendez and Defendant Marrero were on duty and arrived in the vicinity of the subject premises in response to a radio-run regarding the said possible shooting.

48. On the date and time in question, Defendant Carolan was on duty and arrived in the vicinity of the subject premises in response to a radio-run regarding the said possible shooting.

49. On the date and time in question, Defendant Gao was on duty and arrived in the vicinity of the subject premises in response to a radio-run regarding the said possible shooting.

50. On the date and time in question, Defendants Doe 1-10, Defendant Sgt. Doe 11 and Defendant Captain Doe 12 were on duty and arrived in the vicinity of the subject premises in response to a radio-run regarding the said possible shooting.

51. On the date and time in question, in furtherance of her investigation of the aforementioned possible shooting, Defendant Mendez sought entry into the subject premises followed by Defendant Marrero.

52. On the date and time in question, in furtherance of her investigation of the aforementioned shooting, Defendant Mendez while entering the subject premises, questioned D. Shand.

53. D. Shand, though responsive, was unable to provide Defendant Mendez with the information she was seeking.

54. Defendant Mendez wrongly assumed that D. Shand was feigning ignorance in order to frustrate the said police investigation.

55. Defendant Mendez took offense at D. Shand's imagined obstruction and reticence.

56. Defendant Mendez then responded with mocking insults and deriding innuendo as she entered into the foyer of the subject premises in furtherance of her investigation of the aforementioned shooting.

57. Plaintiff J. Shand and D. Shand, while still positioned at the front door entrance, privately discussed Defendant Mendez's outburst amongst themselves.

58. Defendant Mendez responded by existing the foyer of the subject premises and aggressively confronted Plaintiff J. Shand.

59. Plaintiff J. Shand attempted to diffuse the tension which Defendant Mendez caused and created by descending the steps of the subject premises and attempting to walk away from the area.

10

60. Defendant Mendez and Defendant Marrero both descended the steps of the subject premises and pursued Plaintiff J. Shand.

61. Defendant Mendez and Defendant Marrero stopped Plaintiff J. Shand on the sidewalk several feet away from the subject premises.

62. Defendant Mendez demanded Plaintiff J. Shand's identification.

63. In response to said demand, Plaintiff J. Shand produced valid identification.

64. In the midst of Plaintiff J. Shand producing identification for Defendant Mendez, Defendant Marrero, without provocation or warning, seized Plaintiff J. Shand from behind with a choke hold.

65. Defendant Mendez and Defendant Marrero then forced Plaintiff J. Shand to the ground face-first.

66. Plaintiff J. Shand was almost immediately rear-cuffed.

67. Plaintiff J. Shand, immobilized on his stomach, remained submissive throughout the encounter, never once responding with force.

68. Defendant Mendez and Defendant Marrero without probable cause, then immediately began striking Plaintiff J. Shand with fists, shod feet or foreign objects, attacking his body and head.

69. D. Shand descended the stairs of the subject premises, approached Defendant Mendez and Defendant Marrero as the said seizure unfolded.

70. D. Shand pleaded with Defendant Mendez and Defendant Marrero to cease the assault upon her husband Plaintiff J Shand.

71. Plaintiff J Shand asked why he was being seized.

72. Plaintiff J Shand pleaded with Defendant Mendez and Defendant Marrero to cease the assault upon his person.

73. Defendant Mendez and Defendant Marrero ignored Plaintiff J. Shand and D. Shand and continued to seize Plaintiff J. Shand with unreasonable force.

74. Defendant Carolan joined the assault and also used unreasonable force against Plaintiff J. Shand.

75. Defendant Gao joined the assault and also used unreasonable force against Plaintiff J. Shand.

76. Defendants Doe 1-10 thereafter joined the assault and also used unreasonable force against Plaintiff J. Shand.

77. Defendant Sgt Doe 11 and Captain Doe 12 were present before, during and after the use of force against Plaintiff J. Shand.

78. Plaintiff J. Shand was thereafter removed to the 32nd Precinct.

79. Plaintiff J. Shand demanded medical attention.

80. Although visibly injured, the Defendant Police Officers unreasonably refused to render aid or seek medical attention for the then injured Plaintiff J. Shand.

81. Defendant Sgt Doe 11 and Captain Doe 12 were present inside of the said precinct during the arrest process of Plaintiff J. Shand and observed readily apparent injuries to Plaintiff J. Shand.

82. Although Plaintiff J. Shand demanded to know his charges, the Defendant Police Officers ignored his request and never informed him of same.

83. Although the Defendant Police Officers knew that they lacked probable cause, they nevertheless charged Plaintiff J. Shand with assault upon a police officer, resisting arrest and related charges.

84. Plaintiff J. Shand and D. Shand were compelled to forego each other's fellowship on June 8, 2015.

85. Although Defendant Police Officers knew that they lacked probable cause, they swore out a Criminal Court Complaint that resulted in the protracted criminal prosecution of Plaintiff J. Shand in the Criminal Court of the City of New York, County of New York, and Docket No. 2015NY036614.

86. On June 9, 2015 Plaintiff J. Shand was arraigned in the New York City Criminal Court, New York County at which time a bail/bond was set.

87. On or about June 19, 2015 Plaintiff Shand was released from the custody of the New York City Department of Corrections after D. Shand secured a bail/bond.

88. Plaintiff J. Shand and D. Shand were compelled to appear at multiple court appearances and the trial of the matter *People of the State of New York v. Jamal Shand*, Docket No. 2015NY036614 until a jury acquitted Plaintiff J. Shand of all charges.

89. Each and all of the acts of Defendant Police Officers alleged herein were undertaken by said Defendant Police Officers in furtherance of their employment by Defendant NYC and NYPD with the power and authority vested in them as officers, agents and employees of Defendant NYC and NYPD and/or incidental to the lawful pursuit of their duties as officers, agents, assignees, employees, or servants, of Defendant NYC and NYPD.

13

<u>PLAINTIFF J. SHAND'S INJURIES AND DAMAGES</u>

90. As a direct and proximate consequence of the aforementioned actions by the defendants:

    a)    Plaintiff J. Shand was deprived of his rights, liberties, immunities and privileges in violation of his federal constitutional rights;

    b)    Plaintiff J. Shand was maliciously prosecuted;

    c)    Plaintiff J. Shand suffered serious permanent physical injuries;

    d)    Plaintiff J. Shand suffered severe emotional distress and mental anguish and pain;

    e)    Plaintiff J. Shand suffered psychological injuries;

    f)    Plaintiff J. Shand continues to suffer severe emotional and mental anguish and pain;

    g)    Plaintiff J. Shand continues to suffer from psychological injuries;

    h)    Plaintiff J. Shand sustained economic losses;

    i)    Plaintiff incurred other items of attendant damages.

FIRST CAUSE OF ACTION:<br>
CIVIL RIGHTS ACTION 42 USC §1983:<br>
<u>ARREST</u>

91. Plaintiff J. Shand hereby repeats, reiterates and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect set forth herein, further alleges:

92. At all times relevant herein, the Defendant Police Officers were subject to 42 USC §1983.

14

93. Acting under the color of law, the Defendant Police Officers worked a denial of Plaintiff J. Shand's rights, privileges and immunities secured by the United States Constitution and Federal Law.

94. The Defendant Police Officers acted with deliberate indifference to Plaintiff J. Shand's rights, privileges and immunities secured by the United States Constitution and Federal Law.

95. As a direct and proximate result of the Defendant Police Officers' acts and omissions, Plaintiff J. Shand was deprived of his rights, privileges and immunities under the First, Fourth, Ninth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

96. That at all relevant times, Defendant Police Officers separately, and in concert, while acting under color and pretense of law and with deliberate indifference:

    a) retaliated against Plaintiff J. Shand for exercising his right to free speech;

    b) falsely detained, arrested and imprisoned Plaintiff J. Shand;

    c) subjected Plaintiff J. Shand to excessive force;

    d) withheld timely and due medical care and treatment from injured Plaintiff J. Shand;

    e) filed a false arrest report and corresponding NYPD complaint;

    f) gave knowingly false statements or testimony in or for a criminal proceeding;

    g) failed to intercede on behalf of Plaintiff  J. Shand to prevent the Constitutional violations aforesaid, despite having an opportunity to do so;

    h) denied Plaintiff J. Shand equal protection of the law;

    i)   engaged in a cover-up in order to conceal the wrongful and unlawful conduct taken against Plaintiff J. Shand;

    j)   deprived Plaintiff J. Shand of liberty without due process of law, and;

    k)   deprived Plaintiff J. Shand and J. Shand of the right to freely associate with each other.

97.  Each and all of the acts and omissions of the Defendant Police Officers alleged herein were done, under the color of the statutes, ordinances, regulations, customs and usages of the State of New York, City of New York and under the authority of their status as New York City Police Officers.

98.  Each and all of the Defendant Police Officers' acts and omissions alleged herein were undertaken by them while acting in the course and scope of their duties and functions as agents, assignees, employees, servants, or officers of Defendant NYC, and NYPD..

99. The Defendant Police Officers, by reasonable diligence, could have prevented the aforementioned wrongful acts from being committed.

100.  The Defendant Police Officers, by reasonable diligence, could have mitigated Plaintiff J. Shand's injuries had they intervened in the aforementioned unlawful conduct and/or protected Plaintiff.

101.  That the aforesaid actions and omissions violated 42 U.S.C. §1983.

102.  That as a result of the foregoing, Plaintiff J. Shand is entitled to actual, general, special, compensatory and punitive damages against the defendants, and attorney's fees, costs, expert's fees and disbursements pursuant to 42 U.S.C. § 1988.

16

SECOND CAUSE OF ACTION:
CIVIL RIGHTS ACTION 42 USC §1983
<u>DETENTION AND CONFINEMENT</u>

103.  Plaintiff J. Shand hereby repeats, reiterates and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect set forth herein, further alleges:

104.  As a result of the Defendant Officers' concerted and malicious detention and confinement of Plaintiff J. Shand, they deprived him of his rights to liberty in violation of the Fourth, Fifth, Ninth and Fourteenth Amendments of the United States and 42 USC § 1983 thereby impeding the due course of justice.

105.  Plaintiff J. Shand never consented to said detention and confinement.

106.  Plaintiff J. Shand was conscious and aware of his detention and confinement.

107.   That as a result of the foregoing, Plaintiff J. Shand is entitled to actual, general, special, compensatory and punitive damages against the defendants, and attorney's fees, costs, expert's fees and disbursements pursuant to 42 U.S.C. § 1988.

THIRD CAUSE OF ACTION:
CIVIL RIGHTS ACTION 42 USC §1983
<u>REFUSING OR NEGLECTING TO PREVENT</u>

108.  Plaintiff J. Shand hereby repeats, reiterates and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if more fully set forth herein and further allege:

109.  At all times relevant to this complaint, the Defendant Police Officers were acting under the direction of the Defendant Sgt. Doe 11, Defendant Captain Doe 12 and Defendant NYC.

110. Acting under the color of law and pursuant to the official policy or custom of the Defendant NYC and Defendant NYCHA, Defendant Sgt. Doe 11, Defendant Captain Doe 12 knowingly, recklessly or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis the Defendant Police Officers  in their duty to refrain from:

   a) Unlawfully and maliciously arresting, imprisoning and prosecuting citizens who are acting in accordance with their constitutional and statutory rights, privileges and immunities,

   b) Conspiring to violate the rights, privileges and immunities guaranteed to Plaintiff by the Constitution and the laws of the United States and the law of the State of New York, and;

   c) Otherwise depriving Plaintiff of his constitutional and statutory liberties, rights, privileges and immunities.

111. Those individual Defendant Police Officers that were present, but did not actively participate in the aforementioned unlawful conduct, observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene, mitigate and/or stop the events alleged herein.

112. Those individual Defendant Police Officers that were present, but did not actively participate in the aforementioned unlawful conduct, failed to, *inter alia*, report the unlawful conduct alleged herein to supervisors.

113. Those individual supervising Defendant Police Officers who were present, but did not actively participate in the aforementioned unlawful conduct, failed to investigate, sanction, and/or discipline any participant.

18

114.  As a direct and proximate result of this unlawful conduct, Plaintiff J. Shand sustained the damages herein alleged.

115.  That as a result of the foregoing, Plaintiff J. Shand is entitled to actual, general, special, compensatory and punitive damages against the defendants, and attorney's fees, costs, expert's fees and disbursements pursuant to 42 U.S.C. § 1988.

FOURTH CAUSE OF ACTION:
MALICIOUS PROSECUTION

116.  Plaintiff J. Shand, hereby repeats, reiterates and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect set forth herein, further alleges:

117.  Defendant Mendez, while acting under color of law, in the performance of their employment and within the scope of their authority, initiated and continued a criminal proceeding against Plaintiff J. Shand in the matter *People of the State of New York v. Jamal Shand*, Docket No. 2015NY036614.

118.  The said prosecution was terminated in favor of Plaintiff J. Shand's.

119.  Defendant Mendez knew or had reason to know that they lacked probable cause to initiate a criminal proceeding against Plaintiff J. Shand.

120.  Defendant Mendez deliberately testified falsely, withheld vital information, or offered false affidavits or other such writings to the Criminal Court.

121.  Defendant Marrero deliberately testified falsely, withheld vital information, or offered false affidavits or other such writings to the Criminal Court.

122.  Defendant Carolan deliberately testified falsely, withheld vital information, or offered false affidavits or other such writings to the Criminal Court.

19

123.  That by reason of the malicious prosecution, Plaintiff J. Shand was unreasonably deprived of the rights, liberties and immunities secured to him under law and has been otherwise damaged.

124.  That as a result of the foregoing, Plaintiff J. Shand is entitled to actual, general, special, compensatory and punitive damages against the defendants, and attorney's fees, costs, expert's fees and disbursements pursuant to 42 U.S.C. § 1988.

FIFTH CAUSE OF ACTION:
*MALICIOUS ABUSE OF PROCESS*

125.    Plaintiff J. Shand**,** hereby repeats, reiterates and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect set forth herein, further alleges:

126.    Defendant Mendez issued legal process to Plaintiff J. Shand under arrest.

127.    Defendant Mendez arrested Plaintiff J. Shand in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to obtain more arrests, to obtain more indictments, to obtain more convictions, to obtain overtime pay, and to obtain promotions within their respective agencies, among other things.

128.    Defendant Mendez acted with intent to do harm to Plaintiff J. Shand without excuse or justification.

129.  Defendant Marrero aided and abetted Defendant Mendez by having deliberately testified falsely, withheld vital information, or offered false affidavits or other such writings to the Criminal Court.

130.  Defendant Carolan aided and abetted Defendant Mendez by having deliberately testified falsely, withheld vital information, or offered false affidavits or other such writings to the Criminal Court.

131.  As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

132.  That as a result of the foregoing, Plaintiff J. Shand is entitled to actual, general, special, compensatory and punitive damages against the defendants, and attorney's fees, costs, expert's fees and disbursements pursuant to 42 U.S.C. § 1988.


SIXTH CAUSE OF ACTION:
*SUPERVISORY LIABILITY UNDER 42 U.S.C. § 1983*

143.  Plaintiff J. Shand hereby repeats, reiterates and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if more fully set forth herein and further allege:

144.  Upon information and belief, on June 8, 2015 at all times relevant and material to this case, Defendant Sgt Doe 11 and Defendant Captain Doe 12 had direct first-line supervisory responsibilities for taking appropriate measures to ensure and protect the civil rights and personal safety of members of the public in general and the Plaintiff in particular, who came into contact with the officers at the 32nd Precinct.

21

145. These responsibilities were required to be carried out in a manner consistent with the laws and mandates that govern and control the Defendant NYC and NYPD, including City and NYPD directives and orders.

146. Defendant Sgt. Doe 11 and Defendant Captain Doe 12 were present at the subject premises on the date and time of occurrence giving rise to this claim.

147. At all times relevant to this complaint, the Defendant Police Officers were acting under the direction of the Defendant Sgt. Doe 11, Defendant Captain. Doe 12 and Defendant NYC.

148. Acting under the color of law and pursuant to the official policy or custom of the Defendant NYC, Defendant Sgt. Doe 11 and Defendant Captain Doe 12 knowlessly, recklessly or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis the Defendant Police Officers  in their duty to refrain from:

   a) Unlawfully and maliciously arresting, imprisoning and prosecuting citizens who are acting in accordance with their constitutional and statutory rights, privileges and immunities,

   b) Conspiring to violate the rights, privileges and immunities guaranteed to Plaintiff by the Constitution and the laws of the United States and the law of the State of New York, and;

   c) Otherwise depriving Plaintiff of his constitutional and statutory liberties, rights, privileges and immunities.

149. Defendants Sgt. Doe 11 and Captain Doe 12 personally caused Plaintiff J. Shand's deprivations and damages by being deliberately or consciously

22

indifferent to the rights of Plaintiff in failing to properly supervise their
subordinate employees regarding the care and custody, investigation and
safeguarding of Plaintiff from abuse.

150.  Defendants Sgt. Doe 11 and Captain Doe 12 personally caused Plaintiff J.
Shand's deprivations and damages by being deliberately or consciously
indifferent to the rights of others in failing to properly supervise their
subordinate employees regarding the adequate and proper marshaling of
evidence.

151.  Defendant Sgt. Doe 11 and Defendant Captain Doe 12 personally caused
Plaintiff J. Shand's deprivations and damages by being deliberately indifferent
to Plaintiff as they condoned the enforcement of the irrational policy of
arbitrary stopping, searching and seizing persons and using punitive force
against them without probable cause, reasonable suspicion or legal basis.

152.  As a direct and proximate result of this conduct, Plaintiff sustained the
damages herein alleged.

153.  That as a result of the foregoing, Plaintiff is  entitled to actual, general, special,
compensatory and punitive damages against the defendants, and attorney's
fees, costs, expert's fees and disbursements pursuant to 42 U.S.C. § 1988.

SEVENTH CAUSE OF ACTION:
<u>MUNICIPAL LIABILITY</u>

154.  Plaintiff J. Shand hereby repeats, reiterates and re-alleges each and every
allegation contained in the proceeding paragraphs with the same force and
effect as if more fully set forth herein and further allege:

155.  Defendant NYC and the NYPD, through its senior officials at the central office and in each of its precincts, promulgates and implements policies, including those with respect to stop and frisk, use of force, strip searches, body cavity searches, reporting and investigating the use of force by staff, and provision and access to medical and other programs and services mandated by local law and court orders.

156.  Rather than adopt and enforce policies necessary to prevent constitutional violations, Defendant NYC, through its agents, has enforced, promoted, encouraged and sanctioned a policy, practice and/or custom of roving pedestrian checkpoints for general crime control and indiscriminate stops, searches and seizures of persons, including without limitation Plaintiff Shand, absent objective and individualized criteria.

157.  Defendant NYC has enforced, promoted, encouraged and sanctioned a policy, practice and/or custom of stopping, searching, questioning, and seizing, NYCHA guests, including without limitation Plaintiff J. Shand, without the reasonable articulable suspicion of criminality as required by the Fourth Amendment to the United States Constitution.

158.  Defendant NYC has enforced, promoted, encouraged and sanctioned a policy, practice and/or custom of arresting and prosecuting African Americans like Plaintiff J. Shand, without probable cause to establish that a criminal offense has been or is being committed.

159.  By sanctioning and enforcing the arrest policy and practices in this manner, Defendant NYC has unlawfully vitiated the rights, privileges and immunities of

a class or demographic segment within New York City, including without limitation Plaintiff J. Shand and D. Shand.

160. Defendant NYC has been deliberately indifferent to the impact and consequences of the arrest policy and practices.

161. Defendant NYC has been deliberately indifferent to enacting prophylactic measures to mitigate the impact and consequences of the vertical patrol policy and trespass arrest practices.

162. The Defendant Police Officers, while acting under color of state and local law, engaged in conduct that constitutes policies, customs, and practices, procedure or rule of Defendant NYC, and/or NYPD, but which is forbidden by the Constitution of the United States.

163. These constitutional abuses and violations were, and are, directly and proximately caused by policies, practices and/or customs devised, implemented, enforced, promoted, encouraged and sanctioned by Defendant NYC, including but not limited to: (a) the failure to adequately and properly, train, and supervise NYPD officers; (b) the failure to properly and adequately monitor and discipline NYPD officers; (c) the failure to adequately and properly screen and hire NYPD officers, and; (d)  the failure to rectify the NYPD's epidemic of baseless stops, seizures, questions, searches arrests and prosecutions.

164. In addition, senior officials in the NYPD are aware of and tolerate certain practices by subordinate employees.

25

165.  Upon information and belief, the aforementioned practices constitute unwritten NYPD policies and customs because they are widespread, long-standing and deeply embedded in the culture of the agency.

166.  Defendant NYC through the NYPD, has had, and still has hiring practices that it knows will lead to the hiring of police officers lacking the qualifications to discharge their duties in accordance with the Constitution of the United States and is deliberately indifferent to the consequences.

167.  Defendant NYC through the NYPD, has had, and still has supervisory practices that it knows will lead to lax supervision of police officers whom lack the qualifications to discharge their duties in accordance with the Constitution of the United States and is deliberately indifferent to the consequences.

168.  Defendant NYC through the NYPD, has had, and still has disciplinary practice that it knows neither sufficiently deters nor adequately punishes police officers whom lack the qualifications to discharge their duties in accordance with the Constitution of the United States and is deliberately indifferent to the consequences.

169.  Defendant NYC and NYPD through the NYPD, have a de facto policy that invites, *inter alia*, unlawful stops, searches, seizures and prosecutions.

170.  Defendant NYC, through the NYPD, has de facto employee promotion policies and other financial and status incentives that encourage, *inter alia*, negligent investigations; the fabrication of evidence, and perjury.

26

171.  Defendant NYC through the NYPD has de facto policies that encourage competition among employees which fosters, *inter alia*,  improper manipulation of subordinates.

172.  Defendant NYC through the NYPD's actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of officer harassment and intimidations, cover-ups, medical neglect, and other misconduct and fails to investigate these incidents, will suffer no damage to his or her career or financial penalty.

173.  Defendant NYC, at all relevant times, was aware that the individual Defendant Police Officers routinely committed constitutional violations such as those at issue here and have failed to change their policies, practices, and customs to stop this behavior.

174.  The Defendant NYC failed to properly and adequately investigate prior complaints filed against the defendants.

175.  Defendant NYC, through the NYPD, at all relevant times, was aware that the individual Defendant Police Officers were unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

176.  The Defendant NYC, through a policy, practice and custom, directly and proximately caused Plaintiff J. Shand's deprivations and damages.

177.  Nevertheless, the Defendant NYC exercised deliberate indifference by failing to take remedial action.

178.   The existence of the aforementioned customs and practice may be inferred from repeated occurrences of similar wrongful conduct as documented in the civil rights actions filed against the Defendant  NYC, including but not limited to the following cases:

   a)   <u>Lotorto v. City of New York</u>, 10CV1223(ILG)(JMA) (USDC EDNY), (police officers beat, arrest and destroy a video recording of a bystander who was recording an arrest occurring n public);

   b)   <u>Schoolcraft v. City of New York</u>, 10CV6005(RWS)(USDC SDNY), (police officer who exposed a precinct's policies  and practices of illegal quotas for the issuance of summonses and arrests, falsifying evidence and suborning perjury alleges he was arrested and committed to a psychiatric facility in retaliation for exposing said policies and practices to the press);

   c)   <u>Long v. City of New York</u>,  09CV60990(AKH)(USDC SDNY); <u>People v. Pogan</u>, 6416-2018 (Sup. Ct. NY Co.) (police officer who purportedly swore out a false complaint and used excessive force is convicted of falsifying police records and was prosecuted for recklessly using physical force, the plaintiff was engaged in expressive conduct when he was as salted by the office); (police officer at the 24th precinct issues four (4) summonses to a woman for her lodging a complaint  against him with the Civilian Complaint Review Board at the precinct)

   d)   <u>Colon v. City of New York</u>, (09CV0008)(USDC, EDNY); (police officers fired for falsifying evidence);

   e)   <u>Taylor-Mickins v. City of New York</u>, 09CV7923(RWS)(USDC SDNY);

f)  <u>Floyd, et al v. City of New York</u>, (08 CV. 1034) (USDC SDNY)  (SAS)

179.  In addition, the following are City policies, practices and customs:

a)  Falsely arresting  innocent individuals, based on a pretext, in order to meet productivity goals;

b)  Falsely swearing out criminal court complaints and/or lying  and committing perjury during sworn testimony in order to protect other officers and to meet productivity goals;

c)   Fabricating evidence against individuals;

d)  Using and threatening the use of excessive force on individuals;

e)  Retaliating against individuals who engage in free speech;

f)  Ignoring the constitutional rights of the general public;

g)  Ignoring the constitutional rights of the persons in their care and custody;

h)  Use force in an unreasonable, unnecessary, unjustified and excessive manner;

i)  Failing to adequately instruct and supervise the officer under the defendant's care in the proper and appropriate care and treatment of individuals and detainees in their care and custody and control;

j)  Inadequately and/or improperly investigating complaints of harassment, intimidation, misconduct, use of force, abuse by officers and inadequate punishment of the subjects of those complaints;

k)  Tolerating acts of brutality;

l)  IAB and the Inspector General having substantially failed in their responsibility to investigate misconduct and discipline offenders;

29

m) Having policies that operate to insulate police officers who engage in criminal or other serious official misconduct for detection, prosecution and punishment, and are maintained with deliberate indifference

n) Allowing officers and supervisors to engage in patterns and practices of actively and passively covering up misconduct by fellow officers, thereby establishing and perpetuating a "code of silence" which has becomes ingrained in the defendants so to constitute a policy of Defendant NYC, and NYPD/NYPD;

o) Failing to intervene to prevent the above practices.

180. That as a result of the foregoing, Plaintiff J. Shand is entitled to actual, general, special and compensatory damages against the defendant NYC, and attorney's fees, costs, expert's fees and disbursements pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

a) Actual, general and compensatory damages against all Defendant, jointly and severally;

b) Punitive damages in an amount sufficient punish individual Defendants and to deter other like them from repeating the same offenses, jointly and severally;

c) Special damages to cover all medical expenses and pecuniary losses;

d) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

e)  Such other and further relief as this Court deems just and proper.

Dated:     New York, New York
           The 27th day of May 2016

                                              /s/
                                    _____
                                    D. Andrew Marshall, Esq.
                                    Attorney for the Plaintiff
                                    225 Broadway, Suite 1804
                                    New York, New York 10007
                                    (212) 571-3030 (office)
                                    (212) 587-0570 (facsimile)
                                    marshall.law4@verizon.net

32